IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| EARL MARTIN JUNIOR ROSS,<br><br>Plaintiff,<br><br>-against-<br><br>INFLECTION RISK SOLUTIONS, LLC,<br>Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Earl Martin Junior Ross ("Plaintiff") by and through the undersigned counsel, brings the following Complaint against Inflection Risk Solutions, LLC ("Inflection") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a background report that Inflection published to Airbnb, which falsely portrayed Plaintiff as a convicted felon

## INTRODUCTION

1. This is an individual action for damages costs, and attorney's fees brought against Inflection pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA").

2. Inflection is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, rental property companies and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Inflection assembled and published an inaccurate tenant screening report to Airbnb that reported that Plaintiff was convicted of felony larceny. Inflection's reporting is flagrantly inaccurate and untrue.

4. In fact, Plaintiff has never been convicted of a felony in his life.

5. Airbnb cancelled Plaintiff's reservation, and deactivated his Airbnb account, after receiving a background report from Inflection, which reported the inaccurate felony conviction.

6. Inflection's inaccurate reporting could have easily been avoided had Inflection performed a cursory review of the widely available underlying public court records from Bridgeport County, Connecticut regarding the larceny record prior to publishing Plaintiff's report to Airbnb. Had it done so, it would have discovered the record involved another human being entirely.

7. Inflection does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Inflection's failure to employ reasonable procedures resulted in Plaintiff's report being flagrantly inaccurate.

8. Inflection committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking lodging by providing their prospective hosts with inaccurate information.

9. Inflection's inaccurate report cost Plaintiff the ability to book reservations for short-term stays through the Airbnb platform.

10. As a result of Inflection's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation: loss of lodging opportunities; loss of access to the Airbnb platform; lost time and money trying to correct the tenant screening report; damage to Plaintiff's reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment

of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11. As a result of Inflection's conduct, action, and inaction, Plaintiff brings claims against Inflection for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

12. Plaintiff is a natural person residing in Chattanooga, Tennessee, within the confines of Hamilton County, Tennessee. Plaintiff is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13. Inflection is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f). Inflection is incorporated in Nevada, and its principal place of business is located at 555 Twin Dolphin Drive, Suite 630, Redwood City, California 94065. Inflection can be served through its registered agent CSC, located at 2710 Gateway Oaks Dr. Ste 150N, Sacramento, CA 95833.

14. At all times relevant to this Complaint, Inflection acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## JURISDICTION AND VENUE

15. Jurisdiction of this court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal law: 15 U.S.C. § 1681 et seq.

16. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

17. Inflection transacts business in this District; Inflection purposefully avails itself of the protections of this District; and Inflection regularly directs business at this District, such that personal jurisdiction is established.

## STATUTORY BACKGROUND

18. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

19. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

20. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

21. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR CONSUMERS

22. Despite its name, the FCRA covers more than just credit reporting, it also regulates tenant screening reports like the one Inflection prepared in Plaintiff's name.

23. The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

24. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Inflection, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

25. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

26. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

27. Inflection disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## INFLECTION'S ILLEGAL BUSINESS PRACTICES

28. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

29. Tenant screening reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

30. Tenant screening companies, like Inflection, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

31. Given that Inflection is in the business of selling tenant screening reports, Inflection should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

32. Inflection places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Inflection to produce reports containing information that is inaccurate and incomplete than it is for Inflection to exert proper quality control over the reports prior to their being provided to Inflection's customers.

33. Inflection reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

34. Inflection charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

35. Appropriate quality control review of Plaintiff's report would have made clear that Inflection was reporting information belonging to another consumer.

## FACTUAL ALLEGATIONS

### Plaintiff Applies for a Reservation Through Airbnb

36. Plaintiff is employed as a truck driver. Like many truck drivers across the country, Plaintiff routinely stays at hotels, motels, and Airbnb listings while on the road.

37. In fact, in early 2022, Plaintiff did not maintain a permanent address precisely because of how frequently he found himself on the road in different parts of the country.

38. Plaintiff has used Airbnb for years without issue. Plaintiff has found Airbnb to be an incredibly useful service for the purposes of renting short-term housing, particularly when he knows he will be in a specific part of the country for more than a single night.

39. In or around January 2022, Plaintiff had a planned family trip for which he made an Airbnb reservation. Unfortunately, the trip was cancelled due to inclement weather. Accordingly, Plaintiff cancelled the Airbnb reservation he had made in anticipation of the trip.

40. Airbnb offered Plaintiff the choice between a traditional refund, which typically takes several days to process, or a credit with Airbnb. Because of how frequently Plaintiff utilized Airbnb, the credit was the simpler option, and Plaintiff received a credit of approximately $400.

41. In or around June 2022, Plaintiff traveled to Chattanooga, Tennessee to visit his infant daughter, who had recently been diagnosed with autism.

42. At the time, Plaintiff still did not have a permanent address.

43. Therefore, Plaintiff decided to use his Airbnb credit to make a reservation for a short-term stay. Plaintiff specifically needed lodging that would provide his daughter with enough space to play and be comfortable and had access to a kitchen and other amenities not typically found in motels or most hotels. As a result, Plaintiff did not even consider making a reservation for a hotel or motel, and opted instead to use Airbnb as he'd done many times before.

44. Accordingly, in or around June 2022, Plaintiff made a reservation through Airbnb for a short term stay at a house in Chattanooga, Tennessee.

45. Having secured appropriate lodging, Plaintiff was excited about his trip home, and for the upcoming stay with his daughter.

### Inflection Published an Inaccurate Tenant Screening Report to Airbnb

46. Airbnb contracted with Inflection to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to make a reservation.

47. On or about June 17, 2022, in accordance with its standard procedures, Inflection sold a tenant screening report concerning Plaintiff to Airbnb, wherein Inflection published information including Plaintiff's criminal history.

48. The tenant screening report, identified as an "Investigative Consumer Report" by Inflection, is a consumer report regulated by the FCRA.

49. Within the Inflection report, Inflection published flagrantly inaccurate information about Plaintiff.

50. Specifically, the "National Criminal Records Search" section of the tenant screening report included the following criminal court record from Bridgeport County, Georgia (Case No. F02BCR100247696S):

```
Offense #1

Court Case Number  F02BCR100247696S
Court Name         BRIDGEPORT GA
County             BRIDGEPORT
Description        LARCENY 3
                   A-Z Glossary of Criminal Terms
Record Date        2010-02-05
Arresting Agency   LOCAL POLICE BRIDGEPORT
Disposition        Guilty
Disposition Date   2010-11-08
Offense Code       53a-124
Offense Date       2010-02-05
Offense Degree     Felony
Offense Level      FELONY
Offense Severity   Class D
```

51. The felony larceny conviction reported by Inflection about Plaintiff is inaccurate. In reality, Plaintiff has never been convicted of a felony offense in his life.

52. A cursory review of the widely available underlying public court records confirms that Plaintiff never pled guilty to or was convicted of felony larceny. Rather, the public record confirms that Case No. F02BCR100247696S involved a **misdemeanor**-level offense for larceny.

53. The sole reason the inaccurate felony conviction was reported as belonging to Plaintiff was that Inflection failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Airbnb.

54. Had Inflection followed reasonable procedures, it would have clearly and conclusively discovered that Plaintiff has never been convicted of felony larceny and that it should not have reported the same.

55. In preparing and selling a consumer report about Plaintiff, wherein Inflection published to Plaintiff's prospective host inaccurate information about Plaintiff, Inflection failed to follow reasonable procedures to assure that the report was accurate as maximally possible, in violation of 15 U.S.C. Section 1681e(b).

**Airbnb Denies Plaintiff's Reservation and Deactivates Plaintiff's Airbnb Account**

56. On or about June 16, 2022, Plaintiff was notified by Airbnb that his Airbnb account has been deactivated as a direct result of the information reported by Inflection, and furthermore, that Airbnb cancelled his Chattanooga reservation.

57. Inflection no doubt had knowledge that the felony larceny record it had inaccurately reported concerning Plaintiff would result in Plaintiff's removal from the Airbnb platform. To that end, the Airbnb website makes clear that certain crimes will result in the review, removal, or

ineligibility of users. Among the crimes listed as examples for such removal, Airbnb's website explicitly references "felony larceny."[1]

58. Airbnb issued a refund to Plaintiff for the cost of the Chattanooga reservation. However, like Plaintiff's previous refund, this refund was issued in the form of Airbnb credit. Because Plaintiff's Airbnb account had been deactivated, Plaintiff was unable to access this credit.

59. Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked, humiliated, and upset upon reviewing the felony larceny conviction reported by Inflection.

60. Plaintiff was very panicked, confused, and concerned about the impact of the records of the inaccurate reporting that he was a convicted felon, both in relation to his Airbnb account, but also the impact of the same on his future.

61. Specifically, Inflection reported a felony larceny conviction that is clearly labeled in the underlying court records as a **misdemeanor**. The underlying court records were available to Inflection prior to publishing Plaintiff's tenant screening report to Airbnb, but Inflection failed to obtain or perform even a cursory review of such information.

62. Initially, Plaintiff hoped that he could work things out with Airbnb directly. Put plainly, Plaintiff did not wish to interact with Inflection in any way, as the harmful reporting from Inflection had been traumatizing and upsetting for Plaintiff to deal with.

63. Unfortunately, over the next several months, Plaintiff learned that Airbnb was unwilling to reinstate Plaintiff's account without the underlying inaccurate information being removed from Plaintiff's background report.

**Plaintiff Disputed the Misinformation in Inflection's Tenant Screening Report**

---

[1] https://www.airbnb.com/help/article/3095 (February 18, 2023).

64. In or around November 2022, desperate to regain access to his Airbnb account and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Inflection.

65. Plaintiff identified himself and provided information to Inflection to support his dispute.

66. Plaintiff specifically disputed Inflection's inaccurate reporting of Plaintiff's criminal record, and informed Inflection that the felony it was reporting in Plaintiff's tenant screening report was in fact a misdemeanor offense.

67. Plaintiff specifically asked Inflection to investigate and correct its reporting in any tenant screening report about Plaintiff.

68. In or around November 2022, Plaintiff received Inflection's correspondence confirming that it had reinvestigated Plaintiff's dispute. Inflection notified Plaintiff that it had corrected its reporting concerning Case No. F02BCR100247696S to properly indicate that the offense level was a misdemeanor, **not** a felony.

69. Upon information and belief, Inflection corrected its reporting concerning Case No. F02BCR100247696S because it identified that it had reported inaccurate information concerning the same.

70. Inflection also communicated to Plaintiff that it had issued a corrected tenant screening report to Airbnb.

71. Plaintiff continued to follow up with Airbnb in hopes that his Airbnb account would be reactivated, however, at the time of the filing of this Complaint, Plaintiff remains without access to the Airbnb platform.

72. Moreover, as Plaintiff's Airbnb account remains deactivated, Plaintiff cannot recover or access the Airbnb credit he received as a consequence of Airbnb cancelling his Chattanooga reservation.

73. Inflection's false report cost Plaintiff access to a platform that used to provide him with significant utility and benefits, allowing him to book lodging while on the road for work. Furthermore, Inflection's false report left Plaintiff without suitable lodging to care for his infant, autistic daughter.

74. Plaintiff was excitedly looking forward to his stay in Chattanooga, as it would have afforded him his very first opportunity to stay with and care for his daughter alone.

75. Instead, Plaintiff's Chattanooga stay was cancelled at the last minute, causing Plaintiff to be stuck in Chattanooga without a place to stay. Plaintiff was forced to go to several different hotels in order to find a room for the night, as Plaintiff learned that many hotels in Chattanooga will not rent to individuals who have a Chattanooga address on their driver's license – as Plaintiff does.

76. More importantly, Plaintiff's chance to spend time with and care for his daughter was destroyed. Plaintiff was able to visit his daughter while in Chattanooga but could only do so by visiting his daughter at her mother's home. Plaintiff was ashamed that he was unable to provide a space for he and his daughter to spend time.

77. Plaintiff has been extremely stressed because of Inflection's inaccurate reporting. Plaintiff has done a great deal in his life to move on from the criminal records in his past, but the false reporting by Inflection served to dredge up old memories, causing Plaintiff embarrassment.

78. Moreover, Plaintiff has experienced frequent and persistent issues with his sleep schedule. Plaintiff often finds himself unable to sleep through the night due to his onset of severe stress and anxiety, as well as his preoccupation with Inflection and its harmful, violative conduct.

79. Due to Inflection's unreasonable procedures and despite Plaintiff's continued efforts to seek housing, Plaintiff remains without access to his Airbnb account and, consequently, approximately $400 of Airbnb credit.

80. The injuries suffered by Plaintiff as a direct result of Inflection's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Inflection's conduct would have given rise to causes of action based on defamation and invasion of privacy.

81. As a result of Inflection's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of lodging opportunities; loss of access to the Airbnb platform, loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

82. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

83. Inflection is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

84. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

85. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

86. Inflection violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

87. As a result of Inflection's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of lodging opportunities; loss of access to the Airbnb platform, loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

88. Inflection willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

89. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Inflection in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Inflection negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Date: February 23, 2023

/*s/ Christopher Kim Thompson*
Christopher Kim Thompson
Thompson Law
Of Counsel for Consumer Attorneys
4525 Harding Pike, Suite 203
Nashville, TN 37205
Telephone: 615-832-2335
Email: kim@thompsonslawoffice.com

*Attorney for Plaintiff*